# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJAY GHOSH, M.D., <br><br> Plaintiff, <br><br> v. <br><br> AETNA HEALTH OF CALIFORNIA, INC.; CIGNA HEALTHCARE OF CALIFORNIA, INC.; LABORERS NATIONAL HEALTH WELFARE FUND; DELTA HEALTH SYSTEMS; MULTIPLAN SERVICES CORPORATION; INTEGRATED HEALTH PLAN, INC.; and DOES 1 through 20, inclusive, <br><br> Defendants. | CASE NO.: 3:12-CV-1558-JM (BGS) <br><br> **ORDER REMANDING CASE TO STATE COURT** |

On May 17, 2012, Plaintiff Dr. Sanjay Ghosh filed a complaint in the Superior Court of the State of California, County of San Diego, raising state law claims including the unauthorized use of his name for commercial benefit, interference with contractual and economic relationships between Plaintiff and his patients, and fraudulent and unfair business practices. (Dkt. 1, Ex. 3.) On June 25, 2012, Defendant Aetna Health of California ("Aetna") removed this action to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, claiming that Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. because Plaintiff is actually seeking benefit payments as an assignee of ERISA-governed health plans. (Dkt. 1.) On July 25, 2012, Plaintiff filed a motion to remand, explaining that his claims were

wholly based on state law and did not relate to plan terms between patient and insurers. Rather, Plaintiff asserts that his claims are based on Defendants' duty to him and that he could not have raised these claims under ERISA § 502(a)(1)(B) (Dkt. 13 at 7-14). Plaintiff also argues that Defendant Aetna Health of California, Inc.'s ("Aetna") motion for removal is defective because Aetna failed to obtain the consent of all defendants. (Dkt. 13 at 5.)

On August 15, 2012, Aetna filed an amendment to its notice of removal, claiming that Aetna had recently learned facts leading it to believe that complete diversity existed and that this court therefore had subject matter jurisdiction under 28 U.S.C. § 1332.[1] But on September 10, 2012, Defendant filed another amendment to its notice of removal withdrawing its assertion of complete diversity because it believed that Plaintiff had incorrectly asserted a claim against Defendant Delta Health Systems. Aetna instead believes that Plaintiff should have asserted a claim against Wm. Michael Stemler Incorporated (d/b/a Delta Health Systems), which is a California corporation.

For the reasons stated below, the motion for remand is GRANTED.

## I. BACKGROUND

Plaintiff is a California licensed physician and certified neurosurgeon who serves patients in San Diego County. Compl. ¶ 1. Plaintiff serves as both a shareholder and director for both Senta Clinic, Inc., a medical practice specializing in skull base surgery and neurological medical care, and SDNT San Diego Neurotrama Associates, Inc. ("SDNT"), which operates a medical practice specializing in providing emergency department and trauma coverage in skull base surgery and neurological medical care for hospital and health systems in San Diego County. (Dkt. 1, Compl. ¶ 25, 26.)

Defendants Aetna, Cigna Healthcare of California, Inc. ("CIGNA"), United Healthcare of California ("UHC"), Laborers National Health & Welfare Fund ("Laborers"), and Delta Health Systems ("Delta") (collectively "Insurers") provided medical insurance to one or more patients whose medical bills are presently at issue. Plaintiff has no current contractual relationship with any of the Insurers, but previously had contractual relationships with Aetna, Cigna, and UHC.

---

[1] Aetna also stated that this amendment to the notice of removal was timely pursuant to 28 U.S.C. § 1446(b)(3).

1  Plaintiff terminated these contractual relationships on November 11, 2010, January 4, 2011, and
2  December 3, 2010 respectively. (Dkt. 1, Exs. 3B, 3C, 3D.)
3     Defendants Integrated Health Plan, Inc. ("IHP") and Defendant Multiplan Services
4  Corporation ("Multiplan") maintain a network of contracted physicians (often referred to as
5  "contracted providers") and "acquire the right to sell, lease, or transfer access to discount rates for
6  those physicians to insurers and other payors which are responsible for medical bill payments but
7  do not have a direct contractual relationship with the doctors or provider of medical services that
8  would allow them to take such a discount." (Dkt. 1, Ex. 3 at ¶ 10.) IHP is wholly owned by
9  Multiplan. (Dkt. 1, Ex. 3 at ¶ 9.) "IHP and Multiplan are the networks through which Aetna,
10 UHC, CIGNA, Laborers, and Delta claim to have a right to obtain a discount on the rates charged
11 by Dr. Ghosh for the medical services he provided to the patients whose medical bills are at issue
12 in this case." (Dkt. 1, Ex. 3 at ¶ 11.)
13    Plaintiff has never had a direct contractual relationship with Multiplan or IHP. (Dkt. 1,
14 Compl. ¶ 33.) Even though he never entered into a contract with Multiplan, Plaintiff also sent a
15 termination letter to Multiplan on November 3, 2008 because he became aware that Multiplan was
16 holding him out as a contracted provider. (Dkt. 1, Ex. 3 at ¶ 35; Dkt. 1, Ex. 3E.) After discovering
17 that Multiplan was still holding out Plaintiff as a contracted provider, Plaintiff sent Multiplan a
18 cease-and-desist letter on March 12, 2010. (Dkt. 1, Ex. 3F.) Plaintiff believes that Multiplan and
19 IHP are still holding Plaintiff out as a contracted provider. (Dkt. 1, Ex. 3 at ¶ 36.)
20    From late 2010 through early 2012, Plaintiff cared for various patients covered by the
21 Insurers. (Dkt. 1, Ex. 3A.) These patients each provided their medical insurance information and
22 acknowledged responsibility for paying any portion of their bill not covered by medical insurance.
23 (Dkt. 1, Ex. 3 at ¶ 28.) Following Plaintiff's provision of services to these patients, SDNT billed
24 the Insurers according to its usual and customary rates. (Dkt. 1, Ex. 3 at ¶ 29.) The Insurers,
25 however, only paid Plaintiff at discounted rates and refuse to pay the full amount due to Plaintiff
26 for the medical services he provided to his patients. The Insurers also informed Plaintiff's patients
27 that they owed Plaintiff nothing further for his service as he is a contracted provider. (Dkt. 1, Ex. 3
28 at ¶ 44.)

Plaintiff claims to have appealed the underpayment of these claims, repeatedly telling Insurers that he has no contractual relationship with them, Multiplan, or IHP. However, these appeals and explanations have fallen on deaf ears. (Dkt. 1, Ex. 3 at ¶ 43.) Plaintiff also sought payment for the difference from his patients, who similarly refuse to pay the outstanding sums. (Dkt. 1, Ex. 3 at ¶ 45.)

Accordingly, Plaintiff has brought nine causes of action: (1) use of name or likeness (Cal. Civ. Code § 3344) against Defendants; (2) commercial appropriation (Cal. Civ. Code § 3294) against Aetna, Cigna, UHC, Laborers, Multiplan, and IHP; (3) inducing breach of contract against Defendants; (4) intentional interference with contractual relationships against Defendants; (5) intentional interference with prospective economic relations against Defendants; (6) negligent interference with prospective economic relations; (7) unfair business practices (Cal. Bus. & Prof. Code § 17200 *et seq.*) against Defendants; (8) declaratory relief regarding use of name and discounted services; and (9) tort of another (Cal. Bus. & Prof. Code § 17200 *et seq.*) against Multiplan and IHP.

## II. ERISA PREEMPTION

### A. Legal Standard

Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Supreme Court has long recognized that "in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citing Hopkins v. Walker, 244 U.S. 486, 490-491 (1917). When a federal statute like ERISA completely preempts "the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)); Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 944 (9th Cir. 2009) ("A party seeking removal based on federal question jurisdiction must show either that the state-law claims are completely preempted by § 502(a) of ERISA, or that some other basis exists for federal question jurisdiction."). Section 502(a)(1)(B) claims are completely

preempted only if the state-law claim could have been brought "at some point in time" under § 502(a)(1)(B) and "there is no other independent legal duty that is implicated by the defendant's actions." Davila, 542 U.S. at 210. The Davila test is conjunctive, so both prongs must be met to constitute a finding of complete preemption. Id.

**B. Discussion**

Plaintiff seeks to remand his case to state court because his claims turn on the legal duties defendants owed to him rather than a dispute regarding plan terms between his patients and Insurers. Plaintiff states that he could not have brought his claim under ERISA § 502 (a)(1)(B), which permits civil actions to be brought by "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Plaintiff asserts that his claims are not completely preempted as he is not a participant or beneficiary of ERISA-governed health plans and is not asserting claims directly relating to those terms of those plans. (Dkt. 13 at 6-7).

Plaintiff relies on Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp. Inc., 187 F.3d 1045 (9th Cir. 1999), a case in which various medical providers who participated in the Blue Cross Prudent Buyer Plan accused Blue Cross of violating the agreed-upon fee schedule. The Ninth Circuit held that the medical providers' claims were not preempted by either ERISA § 502(a)(1)(B) because the dispute was "not over the *right* to payment, which might be said to depend on the patients' assignments to Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements." Id. at 1051.[2] Plaintiff contends that this case is about his relationship, or lack thereof, with the agreement provider, who should not be permitted to impose a provider agreement upon him unilaterally by misappropriating his name and misrepresenting that he is a contracted provider. Dkt. 13 at 9. Plaintiff's compensation should have been based on him

---

[2] The Ninth Circuit also distinguished Blue Cross of Cal. from Misic v. Bldg. Serv. Emp. Health & Welfare Trust, 789 F.2d 1374 (9th Cir. 1986). In Misic, a dentist brought suit after insurance companies refused to pay 80 percent of his bill after rendering services and having his patients assign him their rights to reimbursement for those services. The court held that the dentist was preempted by § 502 (a) because he was the assignee of the beneficiary who sought recovery under the terms of his patients' benefit plans.

being an out-of-network provider rather than a contracted provider.  As a result of these misappropriations and misrepresentations, Plaintiff asserts that he cannot recover from the agreement that his patients signed to pay the difference between his standard fees and the amount covered by the Insurers.

Plaintiff further notes that his civil suit resembles Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941 (9th Cir. 2009).  In that case, Marin General Hospital ("Marin") sued Medical Benefits Administrators of MD, Inc. ("MBAMD") for breach of contract, negligent misrepresentation, quantum meruit, and estoppel for failing to cover 90 percent of a patient's medical expenses at Marin after MBAMD orally verified patient's coverage and authorized treatment.  The Ninth Circuit held that Marin's claims were not completely preempted by ERISA § 502(a)(1)(B) under Davila's two prongs.  Id. at 947, 949 (citing to Aetna Health Inc. v. Davila, 542 U.S. 200, 2010 (2004)).  Although the original payment was made to Marin in "its capacity as an assignee of patient's rights under his ERISA plan . . . ," Marin was "seeking additional payment, in an amount necessary to bring the total payment up to 90% of its charges."  Id. at 947.  This legal duty for additional payment stemmed from an independent oral contract between Marin and MBAMD.  Id. At 949-950.  A defense of conflict preemption under ERISA §§ 502(a)(1)(B) and 514(a) is insufficient to grant a district court with subject matter jurisdiction.  Id. at 945, 950.

Here, as in Marin, Plaintiff sought payment in addition to payment provided under the patients' ERISA plans, but Plaintiff asserts that he was prevented from recovering these funds because of Defendants' misappropriation of his name by holding him out as a contracted provider for the Insurers and Defendants' misrepresentations to his patients that he was a contracted provider who was only entitled to reimbursement according to those terms.  Plaintiff is not acting as an assignee because he is not seeking to recover what he would have been entitled to under the relevant ERISA plans.  Plaintiff instead seeks damages for Defendants' misappropriations, misrepresentations, and interference in his contractual relationship with his patients for claiming that he was a contracted provider rather than an out-of-network provider.

///

///

Defendants[3] allege that Plaintiff's claims, though "artfully" pled as state law claims, are actually preempted by ERISA.  Defendants insist that Plaintiff meets the first Davila prong because he is an assignee of the ERISA plans' participants or beneficiaries and could therefore bring suit under § 502(a)(1)(B).  Under ERISA, a "participant" is an "employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).  An ERISA "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder" (e.g., a participant's spouse).  29 U.S.C. § 1002(8).  An assignee of benefits due an ERISA participant or beneficiary has standing under § 502(a)(1)(B).  Misic, 789 F.2d at 1379.

To support their claim that Plaintiff should have filed a § 502(a)(1)(B) claim, Defendants cite several cases allegedly demonstrating that "[c]ourts consistently hold state law tort, contract and statutory claims by participants or beneficiaries seeking benefits or to enforce rights under ERISA preempted by ERISA § 502(a)."[4]  Aetna Opp. at 10.  However, these cases concern direct beneficiaries seeking coverage under their ERISA plans who asserted other claims directly related to the ERISA plans.  None of the non-ERISA claims are analogous to Defendants' alleged misappropriation of the Plaintiff's name, misrepresentations regarding Plaintiff's status as a contracted provider.

Defendants also insist that Plaintiff's "status as a provider does not change this result because [he] has standing to bring his claims under ERISA § 502(a)."  Aetna Opp. at 10.

---

[3] Defendants Cigna, UHC, Laborers, Multiplan, and IHP have joined Aetna's opposition to Plaintiff's motion for remand.  Accordingly, Aetna's arguments have been attributed to all Defendants in this order.  Nevertheless, these statements should not be attributable to Delta, which has not filed any response to Plaintiff's motion to remand.

[4] See, e.g., Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-67 (1987) (participant's state law tort and contract claims preempted by ERISA § 502(a)(1)(B)); Elliot v. Fortis Benefits Ins. Co., 337 F.3d 1138, 1147 (9th Cir. 2003) (participant's cause of action under Montana's Unfair Trade Practices Act "which seeks non-ERISA damages for what are essentially claim processing causes of action . . . clearly falls under the Section 1132 preemption exemplified by Pilot Life."); Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 493-94 (9th Cir. 1988) (participant's claims for compensatory and punitive damages under California statutory laws prohibiting unfair insurance practices preempted by ERISA § 502).

1  Defendants are correct that Plaintiff's status as a provider does not necessarily change his standing
2  under ERISA § 502(a)(1)(B). But this does not excuse the Defendants' failure to explain how
3  these claims could have been asserted under ERISA § 502(a)(1)(B). A tangential relationship
4  between Plaintiff's claims and patients' ERISA plans is insufficient to completely preempt
5  Plaintiff's claims.

6  Defendants claim that Plaintiff's reliance on Marin and Blue Cross is misplaced because
7  he had no express contract with the Defendants, as was the case in Marin, and he does not allege
8  any express promises made by Defendants, as was the case in Blue Cross. But these small
9  differences are immaterial. These claims are about Defendants' misappropriation of Plaintiff's
10 name, misrepresentations regarding the Plaintiff's status as a contracted provider, how these
11 misappropriations and misrepresentations negatively impacted his contractual and economic
12 relationships with his patients, and his ability to recover the additional amount owed under his
13 contract with his patients. These claims do not directly concern the patients' benefits under their
14 respective plans, the enforcement of those plans' terms, or clarification of future benefits under
15 those plans.

16 As the first Davila prong requiring that Plaintiff be able to assert his claims under ERISA
17 was not met, Defendants have failed to show that Plaintiff's claims are completely preempted under
18 ERISA. This court therefore does not have subject matter jurisdiction over this matter, so this case
19 must be remanded to state court. This court need not address the second Davila prong.

20 **II. Removal Procedurally Defective**

21 A civil suit asserting federal claims may be removed to federal court under 28 U.S.
22 § 1441(b). Beneficial Nat'l Bank, 539 U.S. at 8. When a civil suit is removed to federal court
23 under 28 U.S.C. § 1441(b), "all defendants must join in a removal petition with the exception of
24 nominal parties." Hewitt v. Stanton, 798 F.2d 1230, 1232 (9th Cir. 1986) (citing 28 U.S.C. §
25 1441(b) ("[A]ll defendants who have been properly joined and served must join in or consent to the
26 removal of the action.")). A removing defendant bears the burden of explaining the absence of any
27 other defendants. Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1266 (9th Cir.1999)
28

("Section 1446 requires all proper defendants to join or consent to the removal notice.") (citing Parrino v. FHP, Inc., 146 F.3d 699, 703 (9th Cir. 1998).

Plaintiff argues that Aetna's removal is defective because "Delta was timely served under state law prior to the removal of this case to federal court . . . [but] has not joined in the removal of this action to federal court." (Dkt. 13 at 5.) Delta has filed nothing with this court, including any opposition to this motion to remand or statement joining Aetna's opposition to this motion. Aetna, however, has asserted in its second amendment to its notice of removal that Plaintiff incorrectly filed a claim against Defendant Delta Health Systems when he should have asserted a claim against Wm. Michael Stemler Incorporated (d/b/a Delta Health Systems). (Dkt. 29 at 1.) Defendants have therefore explained the lack of response, and removal is not defective under 28 U.S.C. § 1441(b)

### IV. CONCLUSION

Accordingly, the matter is hereby **REMANDED** to state court for lack of subject matter jurisdiction. The Clerk of Court is instructed to close the case file.

**IT IS SO ORDERED.**

DATED: October 2, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge